UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL PATRICK FINNEGAN,<br>Plaintiff, | : | |
| v. | : | CA 06-107 M |
| MICHAEL J. ASTRUE,[1]<br>Commissioner,<br>Social Security Administration,<br>Defendant. | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Michael Patrick Finnegan ("Plaintiff") has filed a motion for summary judgment. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

the record and is legally correct. Accordingly, based on the following analysis, I order that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #11) ("Motion to Affirm") be granted and that Plaintiff's Motion for Summary Judgment (Doc. #10) ("Motion for Summary Judgment") be denied.

**Facts and Travel**

Plaintiff was born in 1967 and was thirty-eight years old at the time of the hearing before the Administrative Law Judge ("ALJ"). (Record ("R.") at 20, 57) He has a high school education and past relevant work experience as a siding applicator, window assembler, and carpenter. (R. at 20, 77, 85)

Plaintiff filed an application for SSI on October 15, 2002, alleging disability since April 23, 2002, due to finger lacerations. (R. at 19-20, 57-69, 76) The application was denied initially, (R. at 19, 28), and Plaintiff requested reconsideration, (R. at 34), adding allegations of depression and anxiety, (R. at 20, 103). The application was denied on reconsideration as well, (R. at 19, 29), and a request for a hearing before an ALJ was timely filed, (R. at 19, 38). A hearing was held on January 20, 2005, at which Plaintiff, represented by counsel, appeared and testified. (R. at 19, 267, 271-91, 292-96) Edward Swindell, M.D., a medical expert ("ME"), and Albert Sabella, a vocational expert ("VE"), also testified. (R. at 291-97, 298-300) On May 2, 2005, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 19-27) Plaintiff requested review by the Appeals Council, (R. at 13, 14), which on January 4, 2006, denied his request, (R. at 7-9), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 7). Plaintiff thereafter filed this action for judicial review.

**Medical Evidence**

The record evidence before the ALJ pertaining to Plaintiff's mental impairment[2] consists of a report of a consultative evaluation performed by Ronald M. Paolino, Ph.D., on August 16, 2003, (R. at 151-55); a Rhode Island DDS Case Review Form and Psychiatric Review Technique form ("PRTF") completed by J. Stephen Clifford, Ph.D., on October 6, 2003, (R. at 156-64); and treatment notes from the Providence Center covering the period from June 24, 2003, through December 30, 2004, (R. at 205-61). In addition, Plaintiff's primary care physician, Mary Giovetti, M.D., submitted an Emotional Impairment Questionnaire to the Appeals Council.[3] (R. at 265-66)

**Issue**

The issue for determination is whether substantial evidence supports the Commissioner's decision that Plaintiff is not disabled within the meaning of the Act.

**Standard of Review**

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial

[2] Plaintiff does not contest the ALJ's findings regarding his physical impairment. See Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Plaintiff's Mem.") at 5.

[3] The Court's determination of whether substantial evidence supports the ALJ's decision is based on the evidence before the ALJ. See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001)("[W]e may review the ALJ decision solely on the evidence presented to the ALJ."). Plaintif does not rely on the Emotional Impairment Questionnaire in his argument. See Plaintiff's Mem. at 5-6 (summarizing medical evidence without mentioning Dr. Giovetti); id. at 7-9 (arguing that substantial evidence does not support the ALJ's mental residual functional capacity ("RFC") findings without mentioning Dr.Giovetti's report).

evidence in the record,[4] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his

---

[4] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[5] 20 C.F.R. § 416.921(a) (2007). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 416.920(a) (2007); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 416.920(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4. "The applicant

---

[5] Section 416.921 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b) (2007). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that although the record reflected that Plaintiff had worked since the alleged onset of his disability, he had not engaged in substantial gainful activity since that date; that his finger lacerations, adjustment disorder with depression, and characterological short temper were "severe" within the meaning of the Regulations; that, nonetheless, his claimed impairments, either singly or in combination, did not meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4; that his allegations regarding his limitations were not totally credible; that he retained the residual functional capacity ("RFC") to perform a wide range of light exertional level work, but that he could not perform repetitive climbing of ladders, ropes, or scaffolds, repetitive crawling, repetitive fine manipulation or heavy lifting with his left hand (although he could use his left hand to balance his dominant hand), that he could not be exposed to dangerous equipment due to sensory defecits in his left hand, and that he had a moderate limitation in his ability to maintain concentration which limited him to simple, repetitive tasks; that there was a significant number of jobs in the national economy that Plaintiff could perform, such as light exertional level cashier, security guard, counter clerk, or inspector, which positions numbered 15,000-18,000 regionally, and, at the sedentary exertional level, security-access control/information

clerk, inspector, cashier, stringer racker, and telemarketer, which jobs numbered 8,000 in the regional economy; and that, therefore, he was not disabled as defined in the Act or eligible for SSI benefits. (R. at 25-27)

**Error Claimed**

Plaintiff alleges that the ALJ's mental RFC findings are not supported by substantial evidence. See Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Plaintiff's Mem.") at 7.

**Discussion**

Plaintiff argues that "[t]he ALJ determnined that the plaintiff's dysthymic disorder, his anxiety disorder[,] and his characterological short temper had no effect on his ability to work, other than a moderate impairment in concentration. She had no basis for that conclusion." Plaintiff's Mem. at 8. Plaintiff makes three points in support of his contention.

First, Plaintiff notes that "[t]he only medical source whose opinion supported the ALJ's was the state agency psychologist, who did not examine the plaintiff and who did not see the 53 pages of treatment notes from The Providence Center." Id. However, it does not appear to the Court that the ALJ adopted the opinion of the state agency psychologist, Dr. Clifford.

Dr. Clifford reviewed the medical evidence pertaining to Plaintiff's mental impairments, which at that point consisted solely of the report of the consultative examination performed by Dr. Paolino, and submitted a Rhode Island DDS Case Review Form and a PRTF. (R. at 156-64) Dr. Clifford found Plaintiff's mental impairment(s) to be "Not Severe," (R. at 156), noting that:

> Memory is "excellent," conc[entration] is unimpaired. Fully functional re ADL's. Social skills adequate for workplace relations. Claimant does not have any sig[nificant] restrictions of [a] psych[ological] nature.

(R. at 157) The ALJ, on the other hand, found Plaintiff's mental impairment(s) to be severe at Step Two. (R. at 21)("The medical evidence indicates that the claimant has ... an adjustment disorder with depression, and characterological short temper, impairments that are 'severe' within the meaning of the Regulations ...."). Although on the PRTF Dr. Clifford indicated that Plaintiff would have no difficulties in maintaining concentration, persistence, or pace, (R. at 162), the ALJ determined that he would have a "moderate limitation in his ability to maintain concentration that limits him to simple repetitive tasks," (R. at 24). The ALJ does not mention Dr. Clifford in her summary of the medical evidence regarding Plaintiff's mental impairment(s). (R. at 22) Accordingly, the Court concludes that the ALJ did not adopt Dr. Clifford's assessment and that, therefore, the fact that Dr. Clifford had not seen the Providence Center records does not undermine the ALJ's decision.[6] Cf. Rivera-Torres v. Sec'y of Health & Human Servs., 837 F.2d 4, 5 (1st Cir. 1988)("Contrary to claimant's assertion, the Secretary's decision is not improperly based solely on the testimony of the medical advisor.").

Next, Plaintiff asserts that "the ALJ's conclusions contradict the findings of Dr. Webb and Dr. Paolino. Both rated

---

[6] The Court recognizes that at Step Three the ALJ stated that "[i]n reaching the conclusion that the claimant does not have an impairment or combination of impairments that medically meets or equals a listed impairment, the undersigned has also considered the opinion of the State agency medical consultants who evaluated this issue and reached the same conclusion." (R. at 21)(internal citation omitted). However, it appears that the ALJ was referring to the conclusions of the State agency doctors who reviewed the records pertaining to Plaintiff's physical impairment. (R. at 123, 141) Dr. Clifford opined at Step Two that Plaintiff's mental impairment was not severe. (R. at 156)

the plaintiff's GAF[7] at 50 or below, indicating they believed he had serious symptoms." Plaintiff's Mem. at 8.

The ALJ summarized the evidence from Drs. Paolino and Webb as follows:

> [Plaintiff] was seen by Ronald Paolino, Ph.D., in a psychiatric consultative examination on August 16, 2003. He complained of Post Traumatic Stress Disorder ["PTSD"] and depression. He was alert and oriented in all spheres and his concentration was intact. He reported that he cared for his children, performs household chores, went camping on weekends, had no problem taking public transportation, had several friends, and had a history of cocaine use, but was currently only using marijuana 2-3 times per week. Dr. Paolino made a diagnosis of adjustment disorder with depressed mood and an antisocial personality disorder, and assessed a [GAF] of 50. The claimant treated at The Providence Center from June 2003 until December 2004[8] for an adjustment disorder, anxiety, and cannabis abuse. Treatment notes focus on anger, marital discord and parenting skills. He continued to abuse marijuana. By November 2003, he was showing a brighter affect; in January 2004 he reported minimal irritability and his mood had stabilized; in March 2004 Dr. Adrian Webb, M[.]D[.], a psychiatrist, made a diagnosis of a characterological short temper as

---

[7] The Global Assessment of Functioning ("GAF") "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004)(quoting <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32). The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV-TR at 34. A GAF score between 41-50 is indicative of "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." <u>Id.</u>

[8] Plaintiff treated at The Providence Center initially from June 24, 2003, through July 2, 2004. (R. at 205-51) It appears from the record that he failed to keep his appointments twice without notifying The Providence Center and, as a result, was prohibited from treating there for ninety days. (R. at 250) He subsequently returned to treatment in early November, 2004. (R. at 252-61)

> opposed to an explosive personality disorder.[9] In November 2004, Dr. Webb[] reminded the claimant that the marijuana was not helping him; he also reminded him that he was fully mentally competent and quite capable of understanding what he was doing and the claimant agreed.

(R. at 22)(internal citations omitted).

Plaintiff relies exclusively on the GAF scores in support of his argument that the ALJ's findings contradict those of Drs. Paolino and Webb. See Plaintiff's Mem. at 7-9. Such reliance is misplaced. A GAF of 50 is not determinative of Plaintiff's mental RFC. See Querido v. Barnhart, 344 F.Supp.2d 236, 246 (D. Mass. 2004)("[A] GAF rating of 50 does not necessarily undermine the determination of [the plaintiff's] Residual Functional Capacity .... A raw GAF score of 50, without more,[] does not give a fact finder significant insight into whether [the plaintiff] can perform some type of competitive work.")(footnote omitted)(citing Seymore v. Apfel, 131 F.3d 152, 1997 WL 755386, at *2 (10th Cir. 1997)(unpublished table decision))("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); cf. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 2007)("[The plaintiff] complains that the mental RFC determination must be defective because she has been rated 45-50 on the Global Assessment of Functioning (GAF) scale. Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude her from having the mental

---

[9] In an October 20, 2003, Initial Psychiatric Evaluation, Dr. Webb diagnosed Plaintiff with chronic dysthymia; recurrent depressive episodes, mild to moderate, without psychosis; marijuana abuse; polysubstance dependence, in early remission; characterological short temper; and a GAF of 45-55. (R. at 213, 215)

capacity to hold at least some jobs in the national economy.”); id. (holding that ALJ’s mental RFC finding was supported by substantial evidence in the record); see also 65 FR 50746, 50764-65 (declining to endorse the use of the GAF scale in Social Security disability programs and stating that “[i]t does not have a direct correlation to the severity requirements in our mental disorders listings”). Thus, the Court concludes that Plaintiff’s GAF scores, standing alone, are not determinative of his ability to work.[10]

Finally, Plaintiff claims that “[w]hat the ALJ did was interpret the medical data from The Providence Center and assess the plaintiff’s behavior during the hearing and arrive at her own conclusions. She was not qualified to do so.” Plaintiff’s Mem. at 8. Plaintiff argues that the “ALJ, as a lay fact finder, lacks the expertise to make a medical conclusion.” Id.

Section 416.927 of the Code of Federal Regulations provides, in relevant part, that:

> (e) Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the

[10] The Court notes, parenthetically, that even if Plaintiff’s GAF scores were determinative, Plaintiff’s counselor generally rated Plaintiff’s GAF in the sixties. (R. at 205, 206, 222, 252) A GAF between 51-60 is indicative of “**[m]oderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers).” DSM-IV-TR at 34. A GAF between 61-70 denotes “**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.”** Id. To the extent that the GAF scores represent conflicting evidence, the ALJ is entitled to resolve such conflicts. See Irlanda Ortiz v. Sec’y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)(“[T]he resolution of conflicts in the evidence and the drawing of conclusions from such evidence are for the [Commissioner].”); Evangelista v. Sec’y of Health & Human Servs., 826 F.2d 136, (1st Cir. 1987)(“Conflicts in the evidence are, assuredly, for the [Commissioner]--rather than the courts--to resolve.”).

> examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability.
>
> ....
>
> (2) Other opinions on issues reserved to the Commissioner. We use medical sources ... to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as ... your residual functional capacity ..., the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. § 416.927(e) (2007); see also 20 C.F.R. § 416.945(a)(3) (2007) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (S.S.A.) ("[S]ome issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability. The following are examples of such issues: ... 2. What an individual's RFC is ...."). The ALJ's RFC assessment–finding that Plaintiff was capable of performing a wide range of light work with a moderate limitation in his ability to maintain concentration, thereby limiting him to simple, repetitive tasks, (R. at 24, 26), –sufficiently accounted for any nonexertional restrictions stemming from Plaintiff's mental impairment, see Hubbard-Davis v. Chater, No. 95 C 5556, 1996 WL 386554, at *4 (N.D. Ill. July 5, 1996)("In the RFC finding, the ALJ accomodated [the plaintiff's] mental condition by limiting [her] to simple, unskilled activities with no production stresses and no intense contact with the public."); see also Berrios Lopez v. Sec'y of Health &

Human Servs., 951 F.2d 427, 428 (1st Cir. 1991)(affirming decision where "[t]he ALJ further found that claimant's mental condition did not significantly restrict her functional capacity except insofar as it precluded her from performing skilled or semi-skilled jobs or jobs requiring understanding detailed or complex instructions"), and is supported by substantial evidence in the record.

For example, there is nothing in Dr. Paolino's report which indicates that Plaintiff is unable to perform any work. Dr. Paolino opined that:

> The claimant has a significant history of substance abuse and difficulty with the law .... The accident to his hand was clearly traumatic and has changed his ability to do his previous work. However, he does not ... meet the criteria for either major depressive disorder or posttraumatic stress disorder. He has significant marital problems and difficulty in dealing with his wife who went from being an exotic dancer to having a number of severe medical and psychiatric problems. The claimant could benefit from appropriate medication for his depression and irritability.

(R. at 155) Dr. Paolino indicated no functional limitations, noting only that "[Plaintiff] is capable of managing his own funds." Id.

Similarly, neither Plaintiff's counselor nor his treating psychiatrist at The Providence Center opined that Plaintiff was incapable of doing any work. On the contrary, several times Plaintinff's counselor recommended that he look for work. (R. at 221, 229, 246, 259) The Providence Center notes generally reflect that Plaintiff was making progress with therapy and medication, (R. at 206, 218, 219, 220, 223, 224, 226, 231, 233, 235, 238, 239, 240, 246, 255, 258, 259), despite sometimes being non-compliant with his medication regimen, (R. at 217, 219, 236, 243, 254), and refusing to stop smoking marijuana, (R. at 206,

232, 241, 242, 244, 245, 248, 254).[11] In his report of Plaintiff's initial psychiatric evaluation, Dr. Webb recorded the following observations regarding Plaintiff:

> Cooperative at interview. Speech logical and goal directed. Ample spontaneous speech. No formal thought disorder, disordered perception, passivity phenomena []or gross delusions. Mood state low with mild anhedonia, poor concentration, attention. Increased appetite .... No sleep disturbance on his 10 mg of Valium, but does without. Generalized anxiety. No panic symptoms or obsessive-compulsive symptoms. Irritability which appears to be characterologic along with his temper and explosivity. Currently exacerbat[ed] in the face of mood disorder and anxiety symptoms, but currently verbal abuse. No desire to harm self or others.

(R. at 214)

On Plaintiff's discharge summary dated July 2, 2004,[12] it is noted, presumably by Plaintiff's counselor, that Plaintiff had initially presented for treatment of anxiety and depression, as well as frequent anger outbursts. (R. at 206) Plaintiff "also admit[ted] he has a chronic marijuana dependence problem which he refuses to give up." (Id.) The writer observed that Plaintiff had made some positive gains with medication and therapy and that he was more able to control his temper in difficult situations, but that he refused to stop smoking marijuana. (Id.)

When Plaintiff returned to The Providence Center in November of 2004, Dr. Webb stated that:

---

[11] The Court notes that "to qualify for benefits a claimant must follow prescribed treatment." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991); see also 20 C.F.R. § 416.930(a) (2007) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work ...."); id. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled or blind or, if you are already receiving benefits, we will stop paying you benefits.").

[12] See n.8.

> Needless to say [Plaintiff] found medication to be useful and when he is not taking it his anxiety exacerbates his characterologic explosivity. I've reminded him that he is fully mentally competent and quite capable of understanding what he is doing, i.e.[,] his actions and the legal consequences to his criminal actions. He agrees.
>
> Certainly I've been attempting to decrease his anxiety, his iritability further utilizing medication, but unfortunately the fact he's abusing marijuana is not helping at all.
>
> [] Patient unfortunately is noncompliant with treatment and medication, returned to treatment still abusing marijuana and is in a situation where wife may leave him.

(R. at 254) A month later, Dr. Webb reported that:

> [Plaintiff] has managed to control his temper, feels that the medication has made significant difference and seemed reticent to consider decrease of Seroquel in the future with the option of increasing the Gabitril. [Plaintiff] will probably, therefore, be on Seroquel for some significant period ....
>
> [] A relative stability at this point with euthymic mood, pleased with his new home, no recent explosivity and ongoing issues with significant other with a considerable characteroligic overlay to his presentation.

(R. at 258) Neither Plaintiff's counselor nor Dr. Webb completed a PRTF or mental RFC assessment.

While it is true, as Plaintiff notes, <u>see</u> Plaintiff's Mem. at 8, that the Court of Appeals for the First Circuit has held that "[a]bsent a residual functional capacity assessment from an examining psychiatrist, we do not think the ALJ was equipped to conclude that claimant's condition was so trivial as to impose no significant limitation on ability to work," <u>Rivera-Figueroa v. Sec'y of Health & Human Servs.</u>, 858 F.2d 48, 52 (1st Cir. 1988), here the ALJ reached no such conclusion. The ALJ noted that "there is evidence of functional limitations attributable to a

mental impairment ...," (R. at 22), and, therefore, proceeded to an evaluation of the "B" criteria under Listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.08 (Personality Disorders), (id.).[13] Unlike the situation in Rivera-Figueroa, where the ALJ used the Medical-Vocational guidelines (the "Grid") to direct a conclusion of "not disabled," at Step Five, 858 F.2d at 49, the ALJ in the instant matter correctly recognized that the Grid could only be "used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations," (R. at 24); see also Seavey v. Barnhart, 276 F.3d 1, 5.

In Gonzalez v. Secretary of Health & Human Services, 757 F.Supp. 130 (D.P.R. 1991), the court addressed the First Circuit's opinion in Rivera-Figueroa, stating in relevant part:

> In Rivera-Figueroa v. Secretary of Health and Human Services, 858 F.2d 48 (1st Cir. 1988), the court refused to accept an ALJ's determination of a claimant's RFC where the determination was based solely on the ALJ's own evaluation of the medical evidence. We believe that the case at bar is distinguishable. First, although the 1984 RFC determinations are based on incomplete information, they may well have provided some medically-based guidance for the ALJ. In that sense, the ALJ was not acting completely without medically-based support. Second, while we would have been very troubled if the ALJ had merely adopted a moderate work capacity from the 1984 RFC's, he did not. He adjusted the capacity down, thereby increasing the burden on the Secretary to prove available work in the economy ....

---

[13] The ALJ found that Plaintiff's activity level was "rather broad despite his mental disorder and there is no limitation in his activities of daily living," (R. at 23); that "[t]he evidence as a whole establishes only a mild degree, if any, of limitation in [Plaintiff's] social functioning," (id.); that Plaintiff "ha[s] evidence of a moderate limitation in his ability to maintain concentation that limits him to simple repetitive tasks," (id.); and that there was "no evidence of deterioration or decompensation in work or work-like settings," (id.).

757 F.Supp. at 138; see also Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990)("It is true ... that we have held—and we reiterate—that since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record. This principle does not mean, however, that the [Commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment.")(internal citations omitted). The Gonzalez court also noted that, unlike in Rivera-Figueroa, "[h]ere, the RFC determination rests solidly on the medical evidence." Id.; see also Gordils, 921 F.2d at 328-29 ("Contrary to claimant's contention, there was other evidence in the record on which the Secretary could, and did, also rely to reach this functional conclusion."). Such is the case in the instant matter.

Here, the ALJ had "some medically-based guidance ...," see Gonzalez, 757 F.Supp. at 138, in the form of Dr. Clifford's assessment. Although not adopted by the ALJ–indeed, the ALJ's findings are more restrictive than those of Dr. Clifford,[14] see id. (noting that ALJ had adjusted claimant's capacity downward, thereby increasing burden on Secretary to prove available work in the economy)—Dr. Clifford's report is, in turn, based on the consultative evaluation of Dr. Paolino, who examined Plaintiff. Dr. Paolino's report addressed Plaintiff's activities of daily

---

[14] As noted previously, the ALJ found Plaintiff's mental impairments to be severe and found Plaintiff to have moderate, as opposed to no, difficulties in maintaining concentration, persistence, or pace. (R. at 25-26, 156, 162)

living,[15] social functioning,[16] concentration and task persistence,[17] and functional limitations.[18] (R. at 154-55) The ALJ also considered and incorporated the records from The Providence Center, (R. at 22), including those of Plaintiff's treating psychiatrist, as well as Plaintiff's own testimony and the record evidence pertaining to Plaintiff's daily activities,[19]

---

[15] According to Dr. Paolino's report:

> [Plaintiff] takes care of his children during the week and does work around the house. They go camping on weekends. He has no problems in sitting, walking, or doing housework. "I do everything around the house." He has no driver's license. Although, he states that he periodically will drive, if necessary. He has no problem taking public transportation, going shopping, or cooking.

(R. at 154)

[16] Dr. Paolino noted that:

> He is close to his mother, aunt, and uncle. He stated that he has three or four friends. He doesn't belong to any groups or clubs, doesn't know any of his neighbors. With regards to authority figures, he initially stated "Not really, there are no problems" but then went on to say "I don't particularly like judges or cops but I recognize their authority. I don't like people telling me what to disorder."

(Id.)

[17] Dr. Paolino reported that Plaintiff's "concentration was unimpaired at the time of the interview," (id.), and that Plaintiff "stated that he is able to complete everyday household tasks," (id.).

[18] As noted previously, Dr. Paolino stated only that Plaintiff was "capable of managing his own funds." (R. at 155)

[19] The ALJ described Plaintiff's daily activities as follows:

> The claimant testified and/or the record reflects that his wife is disabled for a bipolar disorder and did not do much around the house. He cares for the children; gets them ready for school; cooks and makes soups and sauces; does the laundry; cares for the 4 month old baby, including feeding and changing; supervises the children when they come home and supervises their homework; watches 4-5 hours of television; spends an hour reading the Bible, attends church 3 times per

(R. at 22-23). Accordingly, the Court rejects Plaintiff's argument that the ALJ impermissibly "ma[d]e a medical conclusion." Plaintiff's Mem. at 8.

The Court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support h[er] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 769 (second alteration in original). Here, the Court concludes that the ALJ reasonably found that Plaintiff was not disabled within the meaning of the Act, as amended, and that the ALJ's determination is supported by substantial evidence in the record. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987)("We must affirm the [Commissioner's] [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

## Conclusion

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record. Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion for Summary Judgment be denied.

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 27, 2008

---

> week, for a total of 5 hours; gets along with the people at church; works on his rose bushes; made flower boxes for his wife; goes camping on weekends; and he took his family camping last summer for 2 months, building fires and cooking meals.

(R. at 22); see also (R. at 23).